73292. GUILLEBEAU v. JENKINS.
(355 SE2d 453)

MCMURRAY, Presiding Judge.

This is a legal malpractice action in which the attorney, John Stephen Jenkins, closed two real estate transactions involving the same parcel of land. In the first transaction, Mrs. Frances K. Smith,

an 83-year-old widow, sold her land to Messrs. Yeargin and Dove. Hours later, in the second transaction, Yeargin and Dove sold the land for a considerable profit.

The facts giving rise to this appeal are summarized as follows: On or about January 30, 1980, Mrs. J. W. Guillebeau entered the office of Yeargin Realty in Elberton, Georgia and inquired about the value of an acre of land. The real estate agent on duty, Dove, informed Mrs. Guillebeau that the value of land depended upon where it was situated and what was situated on it. Mrs. Guillebeau got more specific. She said she wanted to know the value of land located directly across the street. She told Dove that the land belonged to her sister, Mrs. Smith, and that a friend of the family offered her sister $1,000 for an acre of it. Dove excused himself and spoke with his broker, Yeargin. Yeargin said the land was worth at least ten times the amount offered by the family friend and that he would pay that amount himself without getting out of his chair. Dove returned to Mrs. Guillebeau and told her that the land was worth at least ten times $1,000. He asked Mrs. Guillebeau if Yeargin Realty could list the property on behalf of her sister. Mrs. Guillebeau replied that she would be returning to Elberton (she lived in Thomson, Georgia) in about a week and that she and her sister would contact Dove to discuss the matter at that time. In the meantime, Dove and Yeargin talked things over and decided that if the land was to be offered for sale, they would consider buying it together.

Mrs. Guillebeau returned to Elberton on February 6, 1980, and went to her sister's house. She called Dove from there and invited him to come over. Dove arrived and met Mrs. Smith. Again, Dove offered to list the property. He was informed that Mrs. Smith was more interested in selling the property then and there. Dove offered $10,000. When Mrs. Guillebeau asked Dove if he was willing to give $12,500 for the land, he called Yeargin. Yeargin said he would be willing to pay $12,500 but not a penny more. He also said that he would only pay $12,500 if he was given a right of first refusal with regard to an adjacent tract of land and if Mrs. Smith paid closing costs, including attorney fees. Dove surmised that closing costs would be in the neighborhood of $200. He returned to the negotiating table. In short order, it was agreed that the property would be sold for $12,500, that $1,000 of that amount would be allocated to a right of first refusal, and that Mrs. Smith would pay closing costs of up to $200.

When things were wrapped up, Dove asked Mrs. Smith whom she preferred to handle the closing. She replied that Heard, Leverett and Adams had always done her legal work and that she preferred they do the closing.

Dove went back to his office and drew up a contract which reflected the terms of the deal. The contract was signed by Yeargin and

Dove as purchasers and Mrs. Smith signed the contract as seller. Mrs. Guillebeau also signed the contract. Dove asked Mrs. Smith if he could make the arrangements for the closing and she agreed.

Dove had a working relationship with John Stephen Jenkins, an associate with the Heard, Leverett and Adams firm. (Jenkins closed between 10 and 15 real estate transactions for Dove during the period of time in which Dove was a real estate agent. Dove also used other Elberton lawyers to perform closings; he did not use Jenkins more than any other lawyer.) Dove brought the contract to Jenkins on the afternoon of February 6 or the morning of February 7. According to Dove, he told Jenkins that he had a sale he wanted him to handle. He also said that Mrs. Smith wanted the Heard, Leverett and Adams firm to do the closing. In Dove's words: "I told him that Mrs. Smith had indicated that the firm Heard, Leverett and Adams had always done their legal papers, and she also indicated that would be who [sic] she would prefer." (Jenkins disputes this version of the facts. He contends that Dove did not tell him that Mrs. Smith wanted the Heard, Leverett and Adams firm to *handle* the closing until long after the closing took place.) Dove did not tell Jenkins, however, that Mrs. Smith wanted Heard, Leverett and Adams to *represent* her at the closing.

Jenkins looked over the contract. He suggested that Dove have a survey made of the property and he asked whether Dove and Yeargin were willing to pay closing costs in excess of $200. Dove assured Jenkins that they were willing to pay excess costs and Jenkins began making preparations for the closing.

Within a couple of days, Yeargin learned that Grady Albertson, an Elberton entrepreneur, was in the market for a piece of property. Yeargin approached Albertson and told him that he had a contract to buy Mrs. Smith's land. Albertson was interested. He told Yeargin that he was considering the purchase of another piece of property which he valued at $40,000. He added that he would rather buy Mrs. Smith's land because the location suited him more. Yeargin told Albertson that he would be willing to sell him Mrs. Smith's property for $40,000 and Albertson said he would give that some thought. A few days later, Albertson told Yeargin that he would buy Mrs. Smith's property for the price they discussed.

Albertson had been a longtime client of the firm of Heard, Leverett and Adams and he told Yeargin that he wanted that firm to do the closing. Dove prepared a contract for the sale of the property to Albertson. It reflected a $40,000 purchase price. Albertson never signed the contract; but Dove was confident he would go through with the deal. Accordingly, on February 12 or 13 Dove brought the contract, unsigned, to Jenkins. Dove told Jenkins about the sale to Albertson and he told him that Albertson wanted Heard, Leverett and Adams

to do the closing. It was decided that the Smith closing would take place on February 15, in the morning, and that the Albertson closing would take place the same day, in the afternoon. Dove telephoned Albertson and told him about his scheduled closing.

The Smith closing took place on February 15, 1980, as scheduled. It was attended by Mrs. Smith, Mrs. Guillebeau, Dove and Yeargin. Between the time Dove first brought the Smith contract to Jenkins and the time of the closing, Jenkins had no contact whatsoever with either Mrs. Smith or Mrs. Guillebeau. At the closing, Jenkins observed that Mrs. Smith appeared competent and alert. (In fact, she requested that at least one change be made in the documents.) Mrs. Smith voiced no objection to the sale price and, according to Jenkins, she appeared to be satisfied with the terms of the transaction. Jenkins exchanged pleasantries with the sisters; but, essentially, that was all that passed between them. Later in the day, as planned, Jenkins closed the deal between Yeargin, Dove and Albertson.

Two years later, Mrs. Smith died. Her nephew, Ned Guillebeau, became executor of her estate. In April 1983 Guillebeau filed suit against Yeargin, Dove and Albertson in the Superior Court of Elbert County. In that case (which is related to the legal malpractice action sub judice), the estate sought the cancellation of the deed from Mrs. Smith to Yeargin and Dove pursuant to OCGA § 23-2-2. It also sought damages based upon allegations of fraud. The estate voluntarily dismissed that case when the trial court indicated that it would grant summary judgment to Albertson and deny the estate's motion to join Jenkins and the Heard, Leverett and Adams firm as parties. Thereupon, Yeargin and Dove filed motions to set aside the voluntary dismissal, to reinstate the case, and to grant them summary judgment.

In the meantime, the estate filed a new action in Oconee County against Dove (who lived in that county), Yeargin, Jenkins and the law firm. While the Oconee County suit was pending, the Elbert County Superior Court reinstated the action against Yeargin and Dove and granted their motion for summary judgment. The estate appealed that ruling and in *Guillebeau v. Yeargin*, 254 Ga. 490 (330 SE2d 585), the Supreme Court determined that the Elbert County Superior Court properly reinstated the case. It also ruled that factual questions remained with regard to the estate's claims against Yeargin and Dove. Accordingly, the superior court reversed the award of summary judgment to Yeargin and Dove.

The Supreme Court's decision created a venue problem in the Oconee County suit because Dove was the only Oconee County resident (and the action against Yeargin and Dove was reinstated in Elbert County). Accordingly, the Oconee County suit (which proceeded against Jenkins and the law firm) was transferred to Elbert

County. It is this suit which is the subject of this appeal.

After this suit was transferred to Elbert County, the trial court dismissed Heard, Leverett and Adams because of a defect in the service of process. (This ruling is not at issue in this appeal.) The case went on, however, against defendant Jenkins. The estate alleged that Jenkins was liable upon one of two theories: (1) breach of a lawyer's fiduciary duty to his client and (2) fraud. Following discovery, Jenkins moved for summary judgment. The trial court granted Jenkins' motion and the estate appealed. *Held*:

1. "[I]t is the general rule in the majority of states that in a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. [Cits.]" *Rogers v. Norvell*, 174 Ga. App. 453, 457 (330 SE2d 392). Jenkins contends he negated each of these elements and that, therefore, the trial court was correct in granting his motion for summary judgment upon the legal malpractice claim.

"It is generally held that an attorney-client relationship must be demonstrated before a plaintiff may recover in a legal malpractice suit. . . . This is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence. . . ." Friedman, Creation of the Attorney-Client Relationship: An Emerging View, 22 Cal. W.L. Rev. 209, 210 (1986). Accordingly, the threshold question in the case sub judice is whether or not there was an attorney-client relationship between Jenkins and Mrs. Smith.

"Generally, the relation of attorney and client is a matter of contract but the contract may be express, or implied from the conduct of the parties." *In the Matter of Dowdy*, 247 Ga. 488, 491 (277 SE2d 36). Thus, contractual formalities are not essential to the creation of the relationship. *Nicholson v. Shockey*, 192 Va. 270 (64 SE2d 813) (1951); *Lawrence v. Tschirgi*, 244 Iowa 386 (57 NW2d 46) (1953). And, in fact, the relation of attorney and client may be implied from the conduct of the parties. *E. F. Hutton & Co. v. Brown*, 305 FSupp. 371, 388 (S.D. Tex. 1969); *Lawrence v. Tschirgi*, supra. As it is said, "[t]he employment is sufficiently established when it is shown that the advice or assistance of the attorney is sought and received in matters pertinent to his profession." *In the Matter of Dowdy*, 247 Ga. 488, 491, supra.

Does the evidence demonstrate that an attorney-client relationship existed between Jenkins and Mrs. Smith? We think not. In our view, the record is devoid of evidence from which the existence of such a relationship could be found. Mrs. Smith had no contact with Jenkins until the day of the closing. Neither she nor Dove informed Jenkins that she was looking to Jenkins for legal representation and

Jenkins did not offer any legal advice or assistance *to Mrs. Smith.* True, when given the choice, Mrs. Smith said she *preferred* that Heard, Leverett and Adams do the closing. This evidence is not sufficient, however, to create an issue of fact upon the attorney-client question. At best, it merely shows that Mrs. Smith trusted Heard, Leverett and Adams and relied on its expertise to draft the closing documents. *Dolan v. Hickey,* 385 Mass. 234 (431 NE2d 229) (1982). It does not demonstrate the existence of a confidential relationship. Id. We conclude, therefore, that an attorney-client relationship did not exist between Jenkins and Mrs. Smith.

The mere fact that Mrs. Smith paid attorney fees does not lead us to a different conclusion. As a general rule, the test of legal employment is the payment of a fee. *Brown v. Matthews,* 79 Ga. 1, 2 (3) (4 SE 13); *Harkless v. Smith,* 115 Ga. 350, 353 (41 SE 634). Exceptions to the general rule abound, however. Thus, an attorney-client relationship may be found to exist where no fee is paid. Friedman, Creation of the Attorney-Client Relationship: An Emerging View, supra at 212. See also *E. F. Hutton & Co. v. Brown,* 305 FSupp. 371, supra. And the payment of a fee does not necessarily demonstrate the existence of the relationship. Friedman, Creation of the Attorney-Client Relationship: An Emerging View, supra at 213. In the case sub judice, the payment of Jenkins' fee by Mrs. Smith sheds no light upon the attorney-client issue. The payment was made by Mrs. Smith pursuant to a real estate sales contract. Under that contract, Mrs. Smith obligated herself to pay closing costs before anyone contacted Jenkins. Thus, Mrs. Smith did not pay Jenkins' fee in the furtherance of a contract of legal employment.

Our view of this matter is buttressed by the deposition testimony of Mrs. Guillebeau. (Jenkins' attempts to depose Mrs. Guillebeau in this case were frustrated by the estate. See Division 3, infra. However, Mrs. Guillebeau's deposition was taken in the lawsuit which the estate filed against Yeargin and Dove and the trial court permitted its use in this case. See OCGA § 9-11-32 (a) (5); *Colbert Co. v. Newsom,* 125 Ga. App. 571 (1) (188 SE2d 266); *Clover Realty Co. v. J. L. Todd Auction Co.,* 146 Ga. App. 576, 578 (5) (246 SE2d 695). See also Wright & Miller, Fed. Practice & Procedure: Civil § 2150.) Mrs. Guillebeau averred that she urged her sister to hire an attorney; that her sister refused to do so; and that her sister did not retain an attorney. Thus, it cannot be said that Mrs. Smith "thought" that Jenkins represented her interests at the closing.

Even if Mrs. Smith did think that Jenkins was her attorney, we would be constrained to hold that no attorney-client relationship existed. Mrs. Smith's state of mind, unless reasonably induced by representations or the conduct of Jenkins, was not sufficient to create a confidential relationship. *Fox v. Pollack,* 181 Cal. App.3d 954 (226

Cal. Rptr. 532) (1986). An attorney-client relationship cannot be created unilaterally in the mind of a would-be client; a reasonable belief is required. Id. See also Friedman, Creation of the Attorney-Client Relationship: An Emerging View, supra at 231.

An attorney-client relationship did not exist between Jenkins and Mrs. Smith. Accordingly, the trial court properly awarded summary judgment to Jenkins upon the breach of fiduciary duty claim.

2. The estate contends that even if Jenkins did not breach a fiduciary duty to Mrs. Smith, he is liable, nevertheless, because he participated in a fraud which was perpetrated upon Mrs. Smith. In this regard, it is alleged that Jenkins was aware of the fraud which Yeargin and Dove perpetrated; that he assisted Yeargin and Dove in the perpetration of the fraud; that he failed to disclose the fraud to Mrs. Smith; and that, therefore, he was a participant in the fraud.

We cannot agree with the estate's contention. Although questions of fact remain in the related case with regard to the acts of Yeargin and Dove, *Guillebeau v. Yeargin*, 254 Ga. 490, 493 (4), supra, we find no evidence whatsoever which points to Jenkins' complicity in a fraudulent scheme. In the absence of evidence pointing to Jenkins' knowing participation in a fraud, there can be no basis for a finding of fraud on his part. See *Guthrie v. Gen. Motors &c. Corp.*, 172 Ga. App. 260, 261-262 (2) (322 SE2d 752). See also *Samuels v. Smith*, 196 Iowa 336 (196 NW 45, 47) (1923). "[I]t is a cardinal rule of law that one cannot plead fraud against A because B has misled or taken advantage of him." *Johnson v. Durrence*, 136 Ga. App. 439, 442 (221 SE2d 652).

Jenkins averred that he was unaware of any statements made by Yeargin and Dove to Mrs. Smith concerning the value of the property or any other aspect of the sale; that he did not know the actual value of the property; that he did not know if Mrs. Smith received too little for the property or Albertson paid too much; and that he was unaware of any fraud perpetrated by Yeargin and Dove. No evidence was introduced by the estate to dispute Jenkins' averments. There is not even any evidence showing the actual fair market value of the property at the time in question. The mere disparity in the selling prices of the property does not show that Jenkins was aware of any wrongdoing on the part of Yeargin and Dove.

" 'Questions of fraud and bad faith are ordinarily for a jury. *Bloodworth v. Bloodworth*, 225 Ga. 379, 391 (169 SE2d 150); *Nixon v. Brown*, 225 Ga. 811, 813 (171 SE2d 512).' *Crowder v. Electro-Kinetics Corp.*, 228 Ga. 610, 614 (187 SE2d 249). However, a party asserting fraud must introduce some evidence from which an inference of fraud may be drawn in order to make an issue." *Leachman v. Cobb Dev. Co.*, 229 Ga. 207, 209 (190 SE2d 537). Since there is no evidence from which an inference of fraud may be drawn, the trial court properly

awarded summary judgment to Jenkins upon the fraud claim. Id.

3. The estate urges us to reverse an order of the trial court granting Jenkins' motion for sanctions and attorney fees. In his motion, Jenkins asserted that the estate was frustrating discovery by the use of delay tactics. He demonstrated that counsel for the estate delayed the taking of Mrs. Guillebeau's deposition on several occasions. On the last occasion, counsel for the estate sought a postponement only minutes before Jenkins' counsel was to leave to take the deposition.

We cannot say the trial court abused its discretion in awarding attorney fees to defendant. OCGA § 9-11-37 (a) (4). See *Nixon v. Sandy Springs &c. Center*, 167 Ga. App. 272 (1) (306 SE2d 362). See also *Ogletree v. Keebler Co.*, 78 FRD 661 (N.D. Ga. 1978) (defendant's request for attorney fees granted pursuant to Rule 37 (d), Fed. Rules Civ. Proc., where plaintiff's attorney caused postponement of a deposition on two occasions without reasonable notice).

4. The estate contends the trial court erred by quashing a subpoena on an ex parte basis. Through the subpoena the estate sought the deposition testimony of a secretary who was employed by counsel for Jenkins. The subpoena was served on March 24, 1986. The deposition was to take place on April 3, 1986. The estate sought the secretary's testimony in connection with Jenkins' motion for sanctions and attorney fees. The secretary moved for a protective order quashing the subpoena. On March 28, 1986, the trial court entered an order doing just that. No hearing was held upon the secretary's motion.

"Although there is some fragmentary authority for the handling of motions to quash on an ex parte basis (see *Clinton v. Joshua Hendy Corp.*, 285 F2d 848, 851 (9th Cir. 1960), certiorari denied, 366 U. S. 932 (81 SC 1654, 6 LE2d 391) . . . the better practice is one in which the party seeking the subpoena has the opportunity to contest the motion to quash." *Reinders Bros. v. Rain Bird &c. Sales Corp.*, 627 F2d 44, 51-52 (7th Cir. 1980). See also *Grizzard v. Davis*, 131 Ga. App. 577, 578 (1) (206 SE2d 853). On the other hand, ex parte action may be warranted where delay will render the motion to quash moot. *Reinders Bros. v. Rain Bird &c. Sales Corp.*, supra. Moreover, a party can be held to have acquiesced in an ex parte ruling quashing a subpoena unless they seek a prompt reconsideration of the ruling. Id.

In the case sub judice, it was necessary for the trial court to consider the motion to quash expeditiously in view of the relatively short time fuse attached to the subpoena. Furthermore, the estate failed to move for a reconsideration of the trial court's ex parte ruling. Under these circumstances, we find no reversible error.

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED MARCH 9, 1987.

*Harold D. Corlew, James I. Roberts*, for appellant.
*Jeffrey M. Smith, Karen B. Bragman*, for appellee.