## A92A0595. LEGACY HOMES, INC. et al. v. COLE.
(421 SE2d 127)

COOPER, Judge.

The trial court granted summary judgment for appellee, an attorney, on appellants' claim for legal malpractice. In their sole enumeration of error, appellants contend summary judgment was erroneously granted because genuine issues of material fact remain.

Appellants Legacy Homes Inc. ("Legacy") and Tina Playford ("Playford"), president and sole owner of Legacy, were builders of upscale houses in East Cobb. Playford had been a real estate agent and broker before becoming a builder. Duane Noel ("Noel") contracted with appellants to purchase one of their newly-built houses in an all-cash transaction. The selling agent scheduled the closing and arranged for appellee to handle it as closing attorney. On the day of the closing, Noel appeared without the certified checks to pay for the house, but represented that he had the funds and would deliver them to appellee immediately after the closing. It is undisputed that by the time the parties sat down at the closing table to sign the papers, all parties — including Playford, who had attended many previous closings as an agent and broker as well as a builder — knew that the purchaser had not brought his cash. Nonetheless, Playford and the others present proceeded with the closing, with the understanding that Noel would go home and get the checks and return with them to appellee's office immediately afterward. Appellants signed the warranty deed and gave it to appellee, who signed it as notary but did not put his seal on it or give it to Noel pending receipt of Noel's checks. Appellee also disbursed the anticipated proceeds of the sale by issuing checks from his trust account, and all parties signed the settlement statement.

Noel never returned with the certified checks, and subsequently fled the jurisdiction. Appellee stopped payment on the checks issued from his trust account, and all were voluntarily returned except one which was issued to appellants in the amount of $18,540 and had been deposited immediately after the closing. After appellants notified appellee they intended to sue him for legal malpractice, appellee brought an action for declaratory judgment and return of the $18,540 retained by appellants, and appellants brought this counterclaim for legal malpractice. Appellants alleged that appellee did not act in accordance with appropriate standards when he allowed the closing to proceed despite the purchaser's failure to have cash in an all-cash transaction, and when he subsequently stopped payment on the checks drawn against his trust account. Appellants further alleged that this "sale" to Noel prevented them from transferring the property to anyone else, ultimately resulting in foreclosure of the property and appellants' inability to obtain any further loans. The trial court

granted appellee summary judgment, finding that the record presented no issue of fact regarding the existence of an attorney-client relationship between appellee and appellants.

" 'It is generally held that an attorney-client relationship must be demonstrated before a plaintiff may recover in a legal malpractice suit . . . . This is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence . . . .' [Cit.]" *Guillebeau v. Jenkins*, 182 Ga. App. 225 (1) (355 SE2d 453) (1987). "[T]he basic question in regard to the formation of the attorney-client relationship is whether it has been sufficiently established that advice or assistance of the attorney is both sought and received in matters pertinent to his profession." *Huddleston v. State*, 259 Ga. 45 (1) (376 SE2d 683) (1989) (citing *Guillebeau*, supra). In *Guillebeau*, this court held there was no attorney-client relationship between the seller of real property, an 83-year-old widow, and the closing attorney, even though the seller had suggested using the closing attorney's firm, had used the firm for other matters in the past, and paid the closing attorney's fees pursuant to the terms of the real estate contract. We based our conclusion primarily on the following factors: there was no contact between the seller and the closing attorney prior to the closing, the seller did not communicate to the closing attorney that she was looking to him for advice, and the closing attorney did not offer the seller any legal advice or assistance. *Guillebeau*, supra at 229-231.

These same factors are present in this case. It is undisputed that appellants and appellee had never met or spoken prior to the closing, that appellants never asked appellee for legal advice, and that appellee never offered any. Nonetheless, appellants claim an attorney-client relationship exists because the selling agent selected appellee to do the closing. Even assuming the selling agent made this selection as appellants' representative, however, this fact does not change our analysis. For, as *Guillebeau* demonstrates, selection of the closing attorney is not enough to establish an attorney-client relationship where the purported client does not seek and the attorney does not give legal advice. Indeed, other factors make appellants' position (that an attorney-client relationship existed) here weaker than that of the seller in *Guillebeau*: unlike the seller in *Guillebeau*, the individual seller here was an experienced businesswoman who had participated in many closings without legal counsel, and she had no history of any past dealings with appellee or his firm whatsoever. We therefore conclude that the trial court was correct in its determination that no attorney-client relationship existed between appellants and appellee as a matter of law.

Under certain circumstances, an attorney may owe a duty to a party who is not his client, but who is a third-party beneficiary to an

agreement between the attorney and his client. See *Kirby v. Chester*, 174 Ga. App. 881 (331 SE2d 915) (1985). For a third party to claim such a duty exists, " 'it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. (Cits.)' [Cit.]" Id. at 884. In *Kirby*, a borrower hired the defendant-attorney to provide the plaintiff-lender with an "attorney's certification and opinion" that the borrower had valid title to the property which would secure the loan, and that the plaintiff-lender's lien would be the first lien against the property. Under these circumstances, this court concluded that, although the agreement was between the borrower and his attorney, it was clearly intended for the benefit of the lender. The actual work product was addressed to the lender, its purpose was to inspire confidence on his part, and the provision of a certification letter by its very nature sought to invoke reliance on the attorney's expert opinion. Id. at 884. But none of these circumstances is present in this case, and there is nothing in the record to suggest that anything appellee did or was hired to do was for the benefit of appellants.

Appellants' reliance on *Simmerson v. Blanks*, 149 Ga. App. 478 (2) (254 SE2d 716) (1979) is equally unavailing. In *Simmerson* we held that an attorney may be liable under a voluntary or gratuitous agency theory where that attorney, representing a party other than the plaintiff, gratuitously states that he will take care of filing papers that it is plaintiff's responsibility to file. Again, nothing in the record shows anything appellee did or said that could be construed as a voluntary offer to represent appellants or do anything on their behalf.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JULY 15, 1992.

*Fletcher & McCurdy, W. Phillip McCurdy III, William A. Fletcher, Jr.*, for appellants.

*Smith, Gambrell & Russell, Margaret A. Murphy, David A Handley, Thomas E. McCarter, McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Linda Finley*, for appellee.

