Antoine AGAPITOS, et al. Plaintiffs,

v.

PCM INVESTMENT COMPANY,
et al. Defendants.

CIV. No. 89–261–3–MAC(DF).

United States District Court,
M.D. Georgia,
Macon Division.

Dec. 8, 1992.

Taylor W. Jones, Atlanta, GA, for plaintiffs.

Ronald Clyde Thomason, Macon, GA, Karen B. Bragman, Frank N. White, J.

Randolph Evans, Atlanta, GA, for defendants.

FITZPATRICK, District Judge.

Defendant Herbert Wells' motion for summary judgment is presently pending before this Court. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). For purposes of a summary judgment motion, the non-movant's version of the facts must be accepted, and all disputed matters must be resolved in favor of the non-movant. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Summary judgment is mandated, however, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## BACKGROUND

The Plaintiffs are all French citizens residing in France. All of the Plaintiffs, with the exception of Philippe Godard, who was the sales agent for the other Plaintiffs' transactions, invested money in real property sold by Defendant PCM Investment Company, Inc. ("PCM"). As a result of a judgment obtained against him in France by three additional investors in the Property, Plaintiff Godard asserts claims against the Defendants on his own behalf as well. (Complaint at ¶ 303, Godard Depo. at 417–418).

The Plaintiff's instituted this action on June 30, 1989, against Defendants PCM Investment Company ("PCM"), Christian Rigaudie, Pierre Mulé and Herbert Wells. PCM is or was a Georgia corporation that sold property to the Plaintiffs. (Complaint at ¶ 2.) Rigaudie and Mulé are or were the principals of PCM who solicited investors in the Property and negotiated the sale of the Property with the Plaintiffs' representative, Godard. (Complaint at ¶ 8.) Rigaudie and Mulé are the individuals who allegedly profited from the Plaintiffs purchase of the Property. (E.g., Complaint at ¶ 8.)

Although Defendants Mulé and Rigaudie, both of whom are French nationals, executed acknowledgments of service of the summons and Complaint, neither ever answered or appeared in this action. Plaintiffs have been unable to locate either Rigaudie or Mulé, both of whom are believed to be in France at this time. (Godard Depo. at 268–269.)

Plaintiffs allege that Defendant Wells (1) aided and abetted the other Defendants' primary federal securities law violations under Section 10(b) and Rule 10b–5; (2) aided and abetted the state securities law violations under Georgia Section 12(a); and (3) engaged in common law fraud. (See Complaint ¶¶ 53, 56, 59.) Plaintiffs' claims against all of the Defendants rest on their contention that they were induced to invest in the real estate by reasonably relying on certain misrepresentations of material fact contained in three documents related to their purchase of the Property. (Complaint at ¶¶ 10, 17, 21–25.)

PCM was incorporated in Georgia on July 11, 1986, by Defendants Christian Rigaudie, Pierre Mulé and one other French national. Defendant Herbert Wells, who is an attorney in Perry, Georgia, incorporated PCM. (Affidavit of Herbert Wells at ¶ 5). PCM's Articles of Incorporation stated that its purpose was the "purchase, sale and management of real estate for agricultural purposes."

In July 1986, PCM purchased 190.85 acres in or near Macon, Georgia. The property is known as the Pecan Woods subdivision (hereinafter "the Property"). PCM purchased the Property from two French nationals for approximately $2,500.00 per acre. Plaintiff's allege that Defendant Wells represented both PCM and the sellers in that transaction. (Id. at ¶ 5).

During the sixteen or seventeen months between their purchase of the Property and the November 1987 sale of the Pecan

Woods lots to the Plaintiffs, PCM produced three documents—the Prospectus, the Reservation Contract and the Closing Contract—containing material misrepresentations concerning the nature of the Property, the intended development of the Property and the potential investment opportunity therein. Defendant Wells drafted the Closing Contract at PCM's request. (Wells' Affidavit at ¶ 9).

In 1987 Plaintiff Godard was given the exclusive right to market the property in France. The Prospectus and the Reservation Contract were sent to the Plaintiffs and other French nationals, via Plaintiff Godard. The Property was marketed only in France. Only a few lots were ever sold. All lots sold were sold to French nationals. No Macon residents, Georgia residents or U.S. Citizens ever invested in the property.

The Prospectus was a sales brochure designed to interest potential investors in the Property. It contained false statements about Macon and the Pecan Woods area. The Reservation Contract set forth details about the development of the Property and the promised return on investment. The Reservation Contract provided that Rigaudie and Mulé, via PCM, would subdivide the Property and reserve a lot for each investor, that PCM had the right to build a house on the investor's lot and then sell the lot. PCM also guaranteed the return on the original investment capital, plus an annual return of at least thirty per cent (30%) per year and as much as sixty (60%) in two years. In the alternative, the Reservation Contract provided that if PCM failed to sell an investor's lot, that investor would be entitled to the conveyance of another Pecan Woods' lot for only one dollar. Neither document mentioned any risk.

Both the Reservation Contract and the Prospectus stated that Defendant Wells, an American attorney, was involved in the venture and that he would see to it that the venture complied with all applicable securities laws. (Godard Depo. at 326). Plaintiffs were lead to believe that the venture was reputable because an American attorney was involved. (Id.) The Plaintiffs relied on the representations regarding Defendant Wells' involvement and the credibility it would represent in deciding to invest in the property. (Godard Depo. at 333–334).

Defendant Wells met with Defendants Rigaudie and Mulé several times during the fall of 1987, while the Prospectus and Reservation Contract were being circulated. (Wells Depo. at 50–54). Wells also drafted the Closing Contract, which restates in English many of the promises contained in the Reservation Contract. (Wells Affidavit at ¶ 9).

The Closing Contract provided that if the investor's lot was sold within 12 months, PCM would pay the investor the original purchase price plus 30%; within 18 months, purchase price plus 45%; and within 24 months, purchase price plus 60%. (Exhibit 58 to Wells Deposition). Wells understood the terms of the Closing Contract as they are stated in that document. (Wells Deposition, p. 62).

Between PCM's purchase of the Property and the November 1987 sale to Plaintiffs, Wells also drafted closing statements for each lot. These closing statement set forth the purchase price, closing cost, seller's equity disbursement—including two large mortgage payments—and other receipts for each parcel of land. (Godard Depo. at 6). Wells did not disclose the existence of the two mortgages on the Property when Godard asked him to explain the Closing Statement at the closing. (Godard Depo. at 366).

In addition to the above-mentioned participation, Wells drafted a Power of Attorney, which appointed Godard to act for each Plaintiff at the closing, for each Plaintiff. Furthermore, prior to the closing date, Wells accepted and held Plaintiffs' one-third down payment on their respective lot or lots in his escrow account.

## DISCUSSION

### I. FEDERAL SECURITIES LAW CLAIMS

In the instant action Plaintiffs allege that Defendant Wells aided and abetted the other Defendants primary federal securi-

ties law violations. Defendant contends that Plaintiffs have not put forth sufficient evidence to support their claims and that such claims are barred by the applicable statute of limitations.

### A. Statute of Limitation [1]

■ Defendant contends that Plaintiffs' claims against him under Section 10(b) and Rule 10b–5 are barred by the applicable statute of limitations. Section 10(b) does not contain a statute of limitation. In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), however, the Supreme Court held that actions brought under Section 10(b) and Rule 10b–5 must be commenced "within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.,* —— U.S. at ——, 111 S.Ct. at 2439, 115 L.Ed.2d at 336. On the same day that the *Lampf* decision was announced, the Supreme Court also stated that the statute of limitation announced in *Lampf* was to be applied retroactively to all Section 10(b) cases pending in federal courts. *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

In response to the *Lampf* and *Beam* decisions, however, Congress enacted a new Section 27A to the 1934 Act, which effectively overruled the decision in *Beam* insofar as it applied to *Lampf,* and to establish that the statute of limitation for actions under Section 10(b) and Rule 10b–5 set forth in *Lampf* could not be applied retroactively. Defendant contends that Section 27A of the 1934 Act is unconstitutional because it violates the doctrine of separation of powers, and therefore is invalid. In *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567 (11th Cir.1992) [2], the Eleventh Circuit held that Section 27A is constitutional. Consequently, Defendant's

statute of limitations argument does not provide a basis for summary judgment [3].

### B. AIDING AND ABETTING LIABILITY

■ A person may be held liable for aiding and abetting if the plaintiff establishes (1) the existence of a securities law violation by the primary party; (2) the defendant's general awareness that his role was part of an overall activity that was improper; and (3) that the defendant knowingly gave substantial assistance to achieve the primary violation. *Woods v. Barnett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1009 (11th Cir.), *reh'g denied,* 772 F.2d 918 (1985).

#### 1. *Primary Violation*

For purposes of this motion, Defendant Wells concedes that Rigaudie, Mulé and/or PCM violated Rule 10b–5 [4] and that the Prospectus and Reservation Contract contain misrepresentations of material fact upon which Plaintiffs justifiably could have relied in deciding to invest in the Property. Plaintiffs allege that Wells was involved in the production of both these documents. While this Court is obligated to accept the Plaintiffs' version of the facts as true, Plaintiffs have not provided any evidence to rebut Wells' affidavit, which states that he did not participate in the drafting of the Prospectus or the Reservation Contract, both of which were in French, which he neither speaks nor reads. (Wells Affidavit ¶¶ 11–12.) In fact, none of the Plaintiffs know of any evidence tending to prove that Wells was cognizant of representations regarding the Property set forth in the Prospectus and Reservation Contract. (Godard Deposition, p. 108, 182–184, 209, 291; Antoine Agapitos Deposition, p. 49; Jean–Paul Dejean Deposition, pp. 43–46; Jean Centene Deposition, p. 42–49.) Therefore,

---

1. Defendant also filed a Motion for Partial Judgment on the Pleadings addressing this issue, which was incorporated into his motion for summary judgment.

2. The Court notes that a petition for rehearing en banc was filed in this case on October 2, 1992.

3. Accordingly, Defendant's Motion for Judgment on the Pleadings is DENIED.

4. Defendant Wells' Memorandum in Support of Motion for Summary Judgment at 16.

since Plaintiffs have not presented any evidence tying Defendant Wells to the Reservation Contract or Prospectus, their claims rest solely on his preparation of the Closing Contract.

· Plaintiffs contend that the Defendant's concession concerning the Prospectus and Reservation Contract also establishes a primary violation as to the Closing Contract since the Closing Contract restates, in English, many of the terms contained in the Reservation Contract. (Wells Affidavit ¶¶ 9, 10.) Defendant Wells' arguments, however, show that he does not concede that the Closing Contract contains misrepresentations of material fact upon which Plaintiff could have justifiably relied in deciding to invest in the Property. A plaintiff must establish the following elements to demonstrate a primary violation: "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which the plaintiff relied, that proximately caused his injury." *Huddleston v. Herman & MacLean*, 640 F.2d 534, 543 (5th Cir.1981), *rev'd on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) [5]. Defendant Wells asserts that the Closing Contract does not provide the basis for any of Plaintiffs' claims against him because Plaintiffs cannot show they relied on the document and because the document does not contain any factual representations about the Property.

### a. Reliance

■ First, Defendant Wells asserts that Plaintiffs cannot establish that they relied on any alleged misrepresentation in the Closing Contract. Reliance is an essential element in all 10b–5 cases. *Id.* Plaintiffs, citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), contend that they do not have to establish reliance. The presumption of reliance established in *Affiliated Ute* applies to cases "involving primarily a failure to disclose." *Id.* Plaintiffs' claims against Defendant

Wells primarily are based on alleged affirmative misrepresentations in the Closing Contract [6]. Moreover, in a "mixed" case involving allegation of both misrepresentations and omissions, the "*Ute* presumption of reliance" does not apply. *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 756–757 (11th Cir.1984). Consequently, Plaintiffs are not entitled to the presumption of reliance.

■ The evidence shows that Plaintiffs decided to invest in the Property before they ever even had indirect contact with Defendant Wells. By the time Wells was asked to draft the Closing Contract, Plaintiffs already had signed the Reservation Contract, which contained representations made by the other Defendants, about whose activities Wells had no knowledge and over whom he had no control. Furthermore, each of the Plaintiffs already had paid PCM a cash deposit equal to one third of the total purchase price on the Property. (Godard Deposition, pp. 342, 377; Dejean Deposition, pp. 51–52; Centene Deposition, pp. 54–56; Agapitos Deposition, pp. 58–62.)

Plaintiffs saw the closing document, which Wells drafted, after they made their deposits and signed the Reservation Contract. All of the Plaintiffs, who were deposed, testified that they did not see the Closing Contract until after they already had decided to invest in the property and had executed the Reservation Contract. (Godard Deposition, pp. 292, 297–298, 326, 341; Agapitos Deposition, pp. 53–56, 68–69; Dejean Deposition, p. 46; Cetene Deposition, pp. 50–53.) Plaintiffs Centene and Agapitos testified that they were uncertain whether they even saw the Closing Contract at any time prior to the closing. (Centene Deposition, pp. 64–65; Agapitos Deposition, p. 68.)

Plaintiffs argue that since they could have withdrawn from the deal even though they had signed the Reservation Contract, there is evidence that they relied on the

---

**5.** This case was decided before September 30, 1981, and therefore, is binding precedent under *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981).

**6.** The two alleged omissions by Defendant Wells, which Plaintiffs rely on to invoke the presumption of reliance were not alleged in Plaintiff's Complaint.

Closing Contract. The Closing Contract, however, did not contain any new information, which could have induced the Plaintiffs to purchase the Property. Plaintiffs concede that the Closing Contract is nothing more than a restatement, in English, of certain provisions contained in the Reservation Contract, which the Plaintiffs already had seen, read and signed by the time they saw the Closing Contract. (Godard Deposition, pp. 325, 332–333.) During his deposition, Plaintiff Godard conceded that the Closing Contract itself did not induce or convince the Plaintiffs to invest in the Property. (Godard Deposition, p. 342.) Consequently, Plaintiffs have not offered any evidence that they relied on the Closing Contract.

### b. Material Misstatement[7]

Defendant Wells also contends that the Closing Contract does not contain any misstatements of material fact. In a 10b–5 case a Plaintiff must establish a misstatement or omission of a material fact. *Huddleston*, at 543; 17 C.F.R. § 240.10b–5(b). The Closing Contract does not contain any of the misrepresentations on which Plaintiffs allegedly relied. (Compare Exhibit "A" to Defendant Wells' Memorandum of Law with Complaint at ¶ 36.) The Closing Contract, in fact, does not contain any "statement of material fact" about the Property or the opportunity to invest therein. Rather, it is a contract, prepared by Defendant Wells at PCM's request, in preparation for the closing, which sets forth certain rights intended to inhere in the parties at the time of purchase, as well as certain covenants regarding the Property to be performed by PCM in the future, upon the occurrence of certain conditions precedent. Consequently, the Closing Contract does not fall within the provision of Rule 10b–5(b) and cannot serve as a basis for Plaintiffs' securities claims. Therefore, Plaintiffs have failed to establish that there was a primary violation under the Closing Contract. Even if, however, there was a primary violation as to the Closing Contract, Plaintiffs have failed to establish

that Defendant Wells was aware of his role in the primary violation.

### 2. *Knowledge of Primary Violation*

 A defendant is liable as an aider and abettor only if a plaintiff demonstrates that the defendant had actual knowledge of the primary violation and his role in such violation. *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96 (5th Cir.1975). In the Eleventh Circuit "severe recklessness" can satisfy the scienter requirement if the defendant owed a duty of disclosure to the plaintiff. *Woods*, 765 F.2d at 1010. Thus, in evaluating whether the severe recklessness standard is applicable, the Court must determine whether Defendant Wells and the Plaintiffs were in a fiduciary relationship, such that Wells was under either a duty to disclose or a duty not to communicate something for which he had little or no basis for belief. *See Id.* (defendant, who owed a duty pursuant to a special code of confidence among bankers, was liable for writing letter of recommendation for the primary violator without investigating the relevant facts and admitted ignorance as to the truth or falsity of the letters contents.)

"Under the federal securities laws, a duty to disclose 'arises from the relationship between the parties' and will exist if there is a 'fiduciary or other similar relation of trust and confidence between them.'" *Schatz v. Rosenberg*, 943 F.2d 485, 490 (4th Cir.1991) (citations omitted), *cert. denied, Schatz v. Weinberg & Green,* — U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). A fiduciary relationship and its corresponding duty can be established either by state or federal law. *Camp v. Dema*, 948 F.2d 455 (8th Cir.1991) (citations omitted); *see also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986) (duty to disclose "must come from a fiduciary relation[ship] outside securities law;" neither Section 10(b) or Rule 10(b)(5) imposes duty to disclose).

Plaintiffs first contend that Wells had a duty to disclose under state law since attor-

---

7. The Court notes that Plaintiffs failed to address this argument in their response to Defen-

dant Wells' motion for summary judgment.

neys involved in real estate transactions or in any other matter, "owe a duty of reasonable care to parties who are not their clients," and that "an attorney may be liable in tort to a third-party for [negligent] professional action taken on behalf of a client." *Kirby v. Chester*, 174 Ga.App. 881, 331 S.E.2d 915 (1985); *Simmerson v. Blanks*, 149 Ga.App. 478, 254 S.E.2d 716 (1979) (attorney has a duty to competently perform a real estate transaction for the benefit of a third-party even when the client, and not the third-party, pays the attorney's fees). These cases merely establish a duty of reasonable care, not a fiduciary duty. This is not a professional negligence case. Plaintiffs do not contend that Defendant Wells improperly handled the closing. Plaintiff have cited no authority that states that the seller's attorney at a closing has a *fiduciary* duty to a prospective buyer. Thus, a fiduciary relationship did not exist between the parties under either state law.

If a duty is not present under state or federal law, however, a court still may find that the defendant had a duty to the plaintiff by evaluating the following five nonexclusive factors:

1. the relationship of the defendant to the plaintiff;
2. the defendant's access to information relative to the plaintiff's;
3. the benefits derived by the defendant in the relationship with the plaintiff;
4. the defendant's awareness of the plaintiff's reliance; and
5. the defendant's activity in initiating the transaction in question.

*Camp*, 948 F.2d at 460 (*citing Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 653–654 (9th Cir.1988)).

The Court first will address factors one and four. Plaintiffs argue the extent to which the Plaintiffs relied on Wells' services, knowledge and expertise created a special relationship of trust and confidence. In support of this argument Plaintiffs note that Defendant Wells knew the Plaintiffs were French nationals who would be relying on his expertise and that Defendant Wells gave the Plaintiffs affirmative assistance by preparing the Closing Contracts, drafting Powers of Attorney, which allowed Plaintiff Godard to act as each Plaintiff's agent, preparing closing statements for each lot sold, placing the investor's down payment for their lot as well as the balance paid at the time of the closing in his escrow account. Thus, Plaintiffs argue that their perception of Defendant Wells as "a common neutral attorney" and his work to facilitate the closing established a fiduciary relationship between himself and the Plaintiffs.

The Plaintiffs' perception of their relationship with Defendant Wells' is not the relevant factor in assessing whether or not a fiduciary relationship existed. Rather, the Court is to look at Defendant's awareness that the Plaintiffs were relying on him. *Id.* Plaintiffs have not presented any evidence that Defendant Wells actually was aware that Plaintiffs were relying on him. Although the written documents, which PCM submitted to the Plaintiffs to promote the Property, designated Defendant Wells as an American attorney who would be handling the transaction, the evidence shows that Defendant Wells was unaware that his name was being used by Rigaudie and Mulé to promote the investment opportunity. (Wells Deposition, pp. 44, 47, 75–76.) The use of Wells' name without his knowledge negates any contention that he was aware that the Plaintiff's were relying on him and it does not indicate that he represented the Plaintiffs. This conclusion is supported further by Georgia law, which recognizes that Plaintiffs' subjective beliefs are irrelevant absent affirmative representations by Wells that he was their attorney or facts indicating that their belief was reasonable under the circumstances, *See Guillebeau v. Jenkins*, 182 Ga.App. 225, 231, 355 S.E.2d 453, 458 (1987) ("attorney-client relationship cannot be created unilaterally in the mind of a would-be client.")

Plaintiffs also seek impose a special relationship of trust on Wells by contending that they paid his fees. This allegation is contradicted by the evidence. Both the Closing Statements and Defendant Wells'

deposition testimony establish that his fees were paid as a deduction the proceeds PCM received at the closing. (*See* Exhibit "B" to Defendant Wells' Memorandum of Law; Wells Deposition, p. 89.) Furthermore, payment of a real estate attorney's closing fee alone does not create a duty to disclose. *See Guillebeau,* 182 Ga.App. at 230, 355 S.E.2d at 457 (1987). Thus, Plaintiffs' perception that Wells' represented them does not establish a special relationship of trust and confidence.

Second, Defendant Wells did not have any greater access to information than the Plaintiffs did with regard to the fraudulent scheme. Plaintiffs assert that Defendant Wells "knew what [the principals of PCM] were planning to do with the property." (Plaintiff's Response, p. 14.) The clear implication is that Defendant Wells knew the PCM was going to perpetrate a fraud. The cited deposition testimony, however, only indicates that Defendant Wells knew that PCM had divided the property into lots and desired to sell the lots to individual purchasers.

Third, there is no evidence that Defendant Wells derived any benefit from the transaction aside from his legal fees or that he initiated the transaction. The Court might view the nature of the relationship differently if Defendant Wells had a stake in the profits or had encouraged the Plaintiffs to invest in the Property. *See Barker,* 797 F.2d at 492. The evidence, however, shows only that he drafted the Closing Contract as dictated by Riguadie and Mulé. Thus, there is no evidence that the parties were in a fiduciary relationship. Therefore, the scienter requirement cannot be satisfied by severe recklessness under the facts of this case.

Consequently, since Defendant Wells was not under a duty to disclose, he is liable as an aider or abettor for the alleged omissions "only if he acts with a high degree of scienter, that is, with a 'conscious intent' to aid the fraud." *Woods,* 765 F.2d at 1010. Furthermore, with regard to the material misrepresentation, "stronger evidence of complicity [is] required for the alleged aider and abettor

who conducts what appears to be a transaction in the ordinary course of his business." *Woods,* 765 F.2d at 1009-1010; *see Camp v. Dema,* 948 F.2d 455, 459 (8th Cir.1991) ("[k]nowingly engaging in a customary business transaction which incidentally aids the violation of securities laws, without more, will not lead to liability" under Section 10(b) and Rule 10b-5). The Court now will analyze both the claim for material misrepresentation and for omission.

### a. Material Misrepresentation

Defendant contends that aside from the preparation of the Closing Contract prior to the closing, Plaintiffs have not produced any evidence that Defendant Wells acted with the intent to deceive, or that he was aware of the other defendant's illegal activity. The Court agrees. In *Schatz* the plaintiffs asserted both primary and aiding and abetting claims under Section 10(b) and Rule 10b-5 against the law firm responsible for drafting the closing documents incident to an allegedly fraudulent transaction. The closing documents contained misrepresentations of material fact by the law firm's client, the seller of the securities in question. In affirming the trial court's dismissal of the claims against the law firm the Fourth Circuit held:

> [L]awyers do not vouch for the probity of their clients when they draft documents reflecting their clients' promises, statements, or warranties.... Thus, [a lawyer's] alleged transmission of [his client's] misrepresentations does not transform those misrepresentations into the representations of [the lawyer].... [A] lawyer or a law firm cannot be liable for the representations of a client, even if the lawyer incorporates the client's misrepresentations into legal documents of agreements necessary for closing the transaction.

*Schatz,* 943 F.2d at 495.

Plaintiffs, however, argue that knowledge can be inferred because Wells' experience in the handling of numerous real estate closings, his knowledge of the vast price differential on the lots, the promised return of investment of thirty to sixty per-

cent in two years with no mention of risk, and the fact that all the purchasers were French nationals "should have" or "must have" alerted Wells to the atypical nature of the transaction, i.e. the scheme to defraud. *See Woodward*, 522 F.2d at 97 ("if the method or transaction is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability.")

■ First, an assertion that a defendant attorney "must have known" about his clients fraud, without more, is insufficient to establish scienter. *Barker*, 797 F.2d at 496–497 (affirming district court's grant of summary judgment in favor of law firm). The Seventh Circuit concluded that to support an inference of the defendant's knowledge, the plaintiff also must show that the defendant profited from the fraud or otherwise had something to gain from the deceitful scheme. *Id.* at 497. As previously stated, Plaintiffs have produced no such evidence.

■ Second, Plaintiffs characterize the transaction as "atypical" and "suspicious" because foreign purchasers were involved. Plaintiffs, however, ignore Defendant Wells' testimony that he had closed between six and nine real estate transactions involving foreign purchasers without any problem, prior to the closing at issue in this case. (Wells' Deposition, p. 23.) Wells further testified that he considered the closing "routine." (Id. at 70). Thus, Plaintiffs have failed to proffer any evidence that Wells acted with the requisite scienter. Rather, the evidence merely establishes that Wells was merely a scrivener who drafted a legal document in accordance with his client's instructions.

#### b. Omission

■ As stated, Defendant Wells did not have a fiduciary duty to the Plaintiffs, and thus, was not required to disclose the price differential. Therefore unless he acted with a " 'conscious intent' to aid the fraud," *Woods*, 765 F.2d at 1010; he cannot be held liable for aiding and abetting. There is absolutely no evidence that Defendant acted with a conscious intent to de-

fraud when he did not disclose the price differential.

Moreover, Plaintiffs' claim based on Defendant's alleged failure to disclose the existence of two mortgages on the property, and the application by PCM of a portion of the purchase money to release fees relating to those mortgages must also fail because there was full and complete disclosure. The existence of the two mortgages on the Property and the application by PCM of a portion of the Plaintiffs' purchase money to release fees relating to those mortgages clearly were set forth on the face of the Closing Statement presented to Godard at the closing. (See Exhibit B to Memorandum of Law in Support of Defendant Wells' Motion for Summary Judgment.) Furthermore, Plaintiff Godard admits that he read the Closing Statements at the closing before executing the sales contracts on behalf of the other Plaintiffs. (Godard Depo. at 360–367.) Therefore, summary judgment is appropriate on Plaintiffs' claims for omission.

#### 3. *Substantial Assistance*

Since Plaintiffs have failed to establish the first two prongs of the test for aiding and abetting liability, the Court need not address the third.

## II. STATE LAW CLAIMS

Plaintiffs also alleges that Defendant Wells aided and abetted the other Defendants' violation of Georgia Section 12(a) and engaged in common law fraud.

### A. Section 12(a) Claim

■ A claim under the provisions of the Georgia Securities Act is cognizable against aiders and abettors. *Diamond v. Lamotte*, 709 F.2d 1419, 1423 (11th Cir. 1983). Nonetheless, the above discussed reasoning, which mandates granting summary judgment on Plaintiffs' federal securities claim, also mandates granting summary judgment on Plaintiffs' Section 12(a) claim. The language in Section 12(a) and Rule 10b–5 is virtually identical. *Compare* 17 C.F.R. § 240.10b–5 and O.C.G.A. § 10–5–12(a)(2)(B). Thus, when a claim fails un-

der one, it also fails under the other. *See Osterneck v. E.T. Barwick Indus.*, 79 F.R.D. 47 (N.D.Ga.1978).

### B. Common Law Fraud

Plaintiffs claims for common law fraud are based upon the alleged misrepresentations concerning the Property in the Closing Contract as well as Defendant's failure to. disclose the existence of PCM's two mortgages on the Property and the difference between the price for which PCM purchased the Property and the price Plaintiffs paid sixteen months later.

#### 1. *Material Misrepresentations*

 In Georgia " 'actionable fraud cannot be based on statements and promises as to future events.' " *Sams v. Duncan & Copeland, Inc.*, 153 Ga.App. 765, 766, 266 S.E.2d 546, 547 (1980) (citation omitted). The Closing Contract only contains promises as to future events. Consequently, the statements in the Closing Contract are not actionable as fraud.

#### 2. *Omissions*

 Plaintiff also contends that prior to the closing Defendant Wells failed to disclose the existence of PCM's two mortgages on the Property and the difference between the price for which PCM purchased the property and the price for which PCM sold the property to Plaintiffs sixteen months later.

First, as previously stated, the existence of the two mortgages and the application by PCM of a portion of the purchase money to release fees relating to those mortgages were set forth on the Closing Statement presented to Godard at the closing. (*See* Exhibit "B" to Defendant Wells' Memorandum of Law.) Godard admits that he read and signed the Closing Statements prior to executing the sales contract on behalf of the other Plaintiffs. Consequently, the existence of the two mortgages was completely disclosed to the Plaintiffs' agent prior to the closing of their decision to invest in the Property.

Second, Defendant Wells was under no obligation to disclose the price differential to the Plaintiffs. In *Guillebeau v. Jenkins*, 182 Ga.App. 225, 355 S.E.2d 453 (1987), a real estate agent agreed to purchase a tract of land from the decedent's estate for $12,500.00. The real estate agent retained the defendant attorney to close the transaction. The agent then entered into a contract to sell the land for $40,000.00. The defendant attorney closed the second transaction on the same day as the first. The seller in the first transaction died and the plaintiff executor, after learning about the price differential, filed a lawsuit against the defendant attorney alleging breach of fiduciary duty and fraud. The Georgia court granted summary judgment on both claims.

In its discussion of the common law fraud claim the appellate court noted that there was no evidence indicating that the defendant was involved in the fraudulent scheme. The defendant attorney testified that he did not know about any representations the other defendants made to the decedent seller concerning the value of her property, that he did not know the actual value of the property and that he did not know if the decedent seller received too little money for her property. The court stated "[i]n the absence of evidence pointing to [the defendant attorney's] knowing participation in a fraud, there can be no basis for finding fraud on his part." *Guillebeau*, 182 Ga.App. at 231, 355 S.E.2d at 458. The court also found that the "mere disparity in selling prices of the property [did] not indicate the [the defendant attorney] was aware of any wrongdoing on the part of [the real estate agent]." *Id.*

The facts in the present case are similar to the facts in *Guillebeau*. Defendant Wells, like the attorney in *Guillebeau*, performed a real estate closing. The fact that he drafted the powers of attorney and other documents does not raise the inference of any actual knowledge of wrongdoing. Plaintiffs seek to distinguish the present case by arguing that Defendant Wells not only knew the price differential, he also knew the terms of the Closing Contract and took a more active role in facilitating the transactions than the defendant attorney did in *Guillebeau*. The Court fails to

see any evidence indicating actual knowledge. Furthermore, Defendant Wells, like the attorney in *Guillebeau*, was under no duty to disclose the price differential. Therefore, since the two mortgages were fully disclosed, there is no evidence of an intent to defraud and Wells was not under a duty to disclose the price differential, Plaintiffs' claim for fraud based on the alleged omissions must fail.

## CONCLUSION

Accordingly, for the reasons stated above, Defendant's motion for summary judgment is GRANTED.

SO ORDERED.