76979. MOORE et al. v. HARRIS et al.
(372 SE2d 654)

DEEN, Presiding Judge.

In early June 1985, Ivan Moore, on behalf of all the appellants, began negotiations for the purchase of a paving company. On July 12, 1985, Moore met with the sellers and David Harris, an attorney who represented the sellers, to prepare a contract for the sale and purchase of the paving company's assets. The parties reached no agreement at this meeting, but did so during the following weekend.

The parties again met with Harris on July 15, 1985, at which time Harris informed Moore that he represented only the sellers in the transaction. Moore understood Harris's representative position, and indicated that the appellants had an attorney in Iowa who could protect their interests.

Prior to a third meeting on July 17, 1985, Harris was informed by an accountant that the sellers would suffer adverse tax consequences if the deal was structured as an asset sale rather than a stock sale.

Harris related this information at the July 17 meeting. It is disputed whether or not Harris also indicated that the purchasers would not sustain any adverse tax consequences by restructuring the sale as a stock purchase.

Because the parties wanted to proceed immediately with the sale, an addendum to the contract was prepared. This addendum provided that "[i]n order to accomplish the most favorable tax treatment for the seller and lessors, it is understood between the parties hereto that this transaction may evolve into a purchase of the outstanding shares of stock of the seller corporation as opposed to the sale of assets as contemplated by this agreement." The addendum also provided that the purchasers' agreement to change the form of the transaction was contingent upon their tax consequences not being substantially different from those they would incur with an assets purchase.

On August 1, 1985, the parties executed a new sales contract, which was designated as a stock purchase rather than a sale of assets. The appellants did not seek any tax advice from any other attorney or accountant regarding the tax consequences of purchasing the stock of the paving company. This final sales contract contained an acknowledgment which provided that "[t]he parties have consulted with, or had ample opportunity to consult with, their respective accountants regarding the tax implications of this transaction and none of the parties hereto has relied upon or received any tax advice from either Harris & Lister, P. C. or David O. Harris, individually. The parties hereto further acknowledge and agree that the law firm of Harris & Lister, P. C. was retained by and did in fact represent the seller in this transaction and that Harris & Lister, P. C. did not nor does not represent the purchaser in this transaction. . ."

Upon subsequently discovering that changing from asset purchase to stock purchase resulted in an additional tax liability in excess of $200,000, the appellant purchasers commenced this legal malpractice action against Harris, Harris's partner, and their law firm. The trial court granted summary judgment for the defendants, and this appeal followed. *Held*:

" 'It is generally held that an attorney-client relationship must be demonstrated before a plaintiff may recover in a legal malpractice suit. . . . This is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence. . . .' Accordingly, the threshold question in the case sub judice is whether or not there was an attorney-client relationship" between the appellants and Harris. *Guillebeau v. Jenkins*, 182 Ga. App. 225, 229 (355 SE2d 453) (1987). In the instant case, it was uncontroverted that Harris made it clear to the appellants that he represented only the sellers, and that the appellant Moore, who handled the negotiations for the appellants, understood that fact. The evidence demanded a finding

that no attorney-client relationship existed, at least in the classic sense of the term. See *Carmichael v. Barham, Bennett &c.*, 187 Ga. App. 494, (370 SE2d 639) (1988).

Relying upon *Simmerson v. Blanks*, 149 Ga. App. 478, 479 (254 SE2d 716) (1979), the appellants also contend that Harris became their voluntary agent by rendering tax advice. In *Simmerson* this court applied the rule of voluntary agency as stated in Restatement 2d Agency § 378 (1958): "One who, by a gratuitous promise or other conduct which he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent, causes the other to refrain from having such acts done by other available means is subject to a duty to use care to perform such service, or, while other means are available, to give notice that he will not perform." In the instant case, however, the record shows that Harris had no reason to believe that the appellants were relying upon him for tax advice or that anything he had done or said regarding the transaction had caused the appellants to refrain from seeking tax advice. At the second meeting, Harris informed all the parties that he was representing the interests of only the seller, and Moore responded that he had a lawyer in Iowa to consult. Also, in the stock purchase contract itself, Moore acknowledged that Harris had not acted as the appellants' tax adviser, and that the appellants had not received or relied upon any tax advice allegedly given by Harris or his firm. Accordingly, the evidence also demanded a finding that no voluntary agency existed.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED SEPTEMBER 6, 1988.

*Christopher G. Knighton*, for appellants.
*T. Ryan Mock, Jr.*, for appellees.