A01A2018. GARRETT v. FLEET FINANCE, INC. OF GEORGIA.
A01A2019. GARRETT v. BAGGARLY.
(556 SE2d 140)

ELDRIDGE, Judge.

Gerald Turner Garrett, plaintiff, sought to set aside a second mortgage assigned to Fleet Finance, Inc. of Georgia, which he sought to rescind orally; Frances Garrett, his ex-wife, obtained the loan proceeds from Bruce W. Baggarly, Jr., the closing attorney, and had Myrtle Manas, her mother, deposit the funds secretly in her savings account. Fleet Finance, the assignee of the second mortgage, and Baggarly moved for summary judgments which were granted. Garrett separately appeals each grant of summary judgment. We affirm.

Garrett applied for a home improvement loan with Mortgage Matters, Inc. and Don Akers, mortgage broker, on his residence at 2028 Kenwood Place, Smyrna, Cobb County. Mortgage Matters approved a $12,750 loan, which on February 6, 1990, it subsequently assigned to Fleet Finance; after the origination fee and closing costs, Garrett netted $10,315. On February 1, 1990, Baggarly closed the loan with Garrett. Baggarly had Garrett execute various loan closing

---

documents; Garrett received and executed a real estate loan disclosure statement, notice of the right to cancel, and a waiver of borrower's rights to rescind. The right to rescind could be exercised within three days but had to be in writing and made by February 5, 1990. The notice of the right to rescind read: "HOW TO CANCEL[:] If you decide to cancel this transaction, you may do so by notifying us in writing, at Mortgage Matters, Inc., 1901 Powers Ferry Road, Suite 230, Marietta, Georgia 30067." The closing statement disclosed that the funds would not be disbursed for three days until February 4.

Garrett suffered from severe dyslexia so that he had a problem reading and understanding what he read. However, Garrett never told either Baggarly or the mortgage broker that he was dyslexic, could not read, wanted the documents read to him, and needed the documents explained to him. Baggarly never asked Garrett if he could read the documents that Garrett was presented to sign, nor did he ask if Garrett understood the documents. Baggarly told Garrett that he could rescind the loan until February 5 but did not tell him that any rescission must be in writing by that date.

Garrett attempted to make an oral rescission by telephone on February 5. On February 6, 1990, the loan was assigned by Mortgage Matters to Fleet Finance. On February 5, Akers telephoned Garrett, telling him that he was to pick up the check between 3:00 and 3:30 p.m. from Baggarly.

On February 7, long after the rescission period had expired, Akers called for him to pick up the check for the loan proceeds, but Garrett told him that he did not choose to go through with the loan; again on February 8, Garrett received a message on his answering machine about picking up the check, and he called back to say that he did not want the loan.

On February 7, 1990, an escrow account check on Baggarly's escrow account was made payable to Gerald T. Garrett for $10,315; the negotiated check showed the endorsements of Gerald T. Garrett and Myrtle Manas. A deed to secure debt from Garrett to Mortgage Matters was executed on February 1, 1990, and filed of record on February 19, 1990. On February 9, Baggarly prepared a modification agreement to the loan to include an amount previously held in escrow and allowed Frances Garrett to sign Garrett's name, and he notarized the signature as Garrett's execution even though it was not. Baggarly then gave Frances Garrett the check although there was no oral or written authorization by Garrett for her to receive such check. Frances Garrett then forged Garrett's name to the check, which she deposited in the savings account of her mother, Manas. Garrett did not know that Frances Garrett had gotten the check until Baggarly called on February 20, 1990, to check to see if he had received the check for $10,315, but Garrett took no action at that time.

Not until October 31, 1994, did Garrett sue Fleet Finance, Akers, Baggarly, Frances Garrett, and Manas for fraud and to set aside the deed to secure debt.

### Case No. A01A2018

1. Garrett contends that the trial court erred in finding that the statute of limitation had run because the transaction was tainted with fraud which tolled the running of the statute under *Beach v. Ocwen Fed. Bank*, 523 U. S. 410 (118 SC 1408, 140 LE2d 566) (1998). We do not agree.

(a) Under the Truth in Lending Act, 15 USCS §§ 1601 through 1607 (e) (1994) (as amended), any deed to secure debt or mortgage had to be rescinded in writing within three days. See 15 USCS § 1635 (a); 12 CFR § 226.15 (a) (2), (3) (1997). Further, any claim based upon rescission under the Act is extinguished three years after the closing of the loan, i.e., ceases to exist as a statute of repose instead of being barred by a statute of limitation.

> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor.

15 USCS § 1635 (f) (1994); see *Beach v. Ocwen Fed. Bank*, supra at 412. "[Section] 1635 (f) completely extinguishes the right of rescission at the end of the 3-year period." Id. at 412.

> [The debtor contended that] § 1635 (f) is a statute of limitation governing only the institution of suit and accordingly has no effect when a borrower claims a § 1635 right of rescission as a "defense in recoupment" to a collection action. They are, of course, correct that as a general matter a defendant's right to plead "recoupment," a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded, survives the expiration of the period provided by a statute of limitation that would otherwise bar the recoupment claim as an independent cause of action. So long as the [lender's] action is timely, a [debtor] defendant may raise a claim in recoupment even if he could no longer bring it independently, absent the clearest congressional language to the contrary. As we have said before, the object of a statute of limitation in keeping stale litigation out of the courts would be distorted if the statute were applied to bar an otherwise

legitimate defense to a timely lawsuit, for limitation statutes are aimed at lawsuits, not at the consideration of particular issues in lawsuits. . . . Section 1635 (f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the right of rescission under the Act shall expire at the end of the time period. . . . It is useful to look ahead to § 1640 with its provisions for recovery of damages. Subsection (e) reads that the 1-year limit on actions for damages does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. 15 USC § 1640 (e). Thus the effect of the 1-year limitation provision on damages actions is expressly deflected from recoupment claims. . . . Thus, recoupment of damages and rescission in the nature of recoupment receive unmistakably different treatments, which under the normal rule of construction are understood to reflect a deliberate intent on the part of Congress. . . . Congress may well have chosen to circumscribe that risk, while permitting recoupment damages regardless of the date a collection action may be brought.

(Citations and punctuation omitted.) Id. at 415-419. Garrett brought this action for damages and to rescind the deed to secure debt, which under the Act is barred. Garrett did not assert a defense of set-off and recoupment to an action to collect the debt but set forth causes of action. Thus, any action must be under Georgia law.

(b) Tortious damage to property is governed by OCGA § 9-3-30 which requires all such actions to be commenced prior to the four-year statute of limitation including fraud. See *Mitchell v. Jones*, 247 Ga. App. 113, 116-118 (3) (541 SE2d 103) (2000). On October 31, 1994, Garrett filed his complaint more than four years after the alleged fraud occurred in February 1990, which would result in the statute of limitation attaching to bar any action.

(c) Garrett contends that fraud prevented him from discovering that the deed to secure debt had not been orally rescinded. However, Garrett had copies of the notice of the right to rescind, which he could have had read to him within the three days for written rescission if he had exercised ordinary care for his own protection. Further, the repeated telephone calls between February 6 and February 9, 1990, for him to come pick up the note should have put him on reasonable

inquiry that there had been no rescission. Finally, when Baggarly called on February 20, 1990, to inquire if Garrett had received the check picked up by his wife, such communication should have given him actual notice that there had been no rescission of the loan.

The conduct that Garrett contends caused him not to bring suit earlier does not come within the tolling provisions. OCGA § 9-3-96; *Costrini v. Hansen Architects*, 247 Ga. App. 136, 138 (2) (543 SE2d 760) (2000). "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." OCGA § 9-3-96.

> [T]he fraud in question is not that which gives a cause of action, but that which conceals a cause of action. To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has [a] cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent.

(Citations and punctuation omitted.) *Turner v. Butler*, 245 Ga. App. 250, 252-253 (2) (537 SE2d 703) (2000) (cert. granted); *Costrini v. Hansen Architects*, supra at 138.

The record is devoid of any evidence that either Fleet Finance or Baggarly affirmatively concealed or hindered or prevented Garrett from discovering either that the loan had to be rescinded in writing, that Garrett's attempt at oral rescission had not been successful, or that Frances Garrett and Manas had received the loan proceeds and had forged his name to the check. See *Costrini v. Hansen Architects*, supra at 138. Thus, the grant of summary judgment was proper. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. Garrett contends that the trial court erred in failing to find that Baggarly was acting as Fleet Finance's agent and that it was a creditor under the Truth in Lending Act. We do not agree.

Baggarly acted as a closing attorney for Mortgage Matters, which is a legal relationship as attorney-client. There is no competent evidence that he represented Fleet Finance in an attorney-client relationship, which would have made him its fiduciary agent rather than Mortgage Matters' attorney or created a conflict of interest. A closing attorney has a fiduciary relationship as agent with his client. See *In the Matter of Allen*, 268 Ga. 752, 753 (493 SE2d 706) (1997).

> The relationship of attorney-client may be expressly created by written contract, or may be inferred from the conduct of

the parties. Although generally, the test of employment is the fee, the basic question in regard to the formation of the attorney-client relationship is whether it has been sufficiently established that advice or assistance of the attorney is both sought and received in matters pertinent to his profession.

(Citations and punctuation omitted.) *Huddleston v. State*, 259 Ga. 45, 46-47 (1) (376 SE2d 683) (1989).

At a loan or real estate closing, the closing attorney acts only as agent for the client or clients who retained him. See *Legacy Homes v. Cole*, 205 Ga. App. 34, 35 (421 SE2d 127) (1992); *Driebe v. Cox*, 203 Ga. App. 8, 9 (1) (416 SE2d 314) (1992); *Carmichael v. Barham, Bennett, Miller &c.*, 187 Ga. App. 494, 495-496 (370 SE2d 639) (1988); *Guillebeau v. Jenkins*, 182 Ga. App. 225, 229-230 (1) (355 SE2d 453) (1987). Where there is a lender and a borrower and the closing attorney was retained by the lender, the closing attorney represents only the lender. See *Williams v. Fortson, Bentley & Griffin*, 212 Ga. App. 222 (441 SE2d 686) (1994); *Richard v. David*, 212 Ga. App. 661 (442 SE2d 459) (1994). Even the selection of the attorney and payment of the attorney fees under the terms of the sales contract do not create an attorney-client relationship when the attorney represents the lender, because professional standards regarding conflict of interest prohibit such conflicting multiple representations. See 238 Ga. 777 (EC 5-1), 780-782 (EC 5-14 through EC 5-20), 785-786 (DR 5-105), 825-826 (Standards 35 through 39); *Legacy Homes v. Cole*, supra at 35; *Guillebeau v. Jenkins*, supra at 229-231. Thus, the existence of an attorney-client relationship is a matter governed by professional legal standards. Code of Professional Responsibility, 238 Ga. 747-832 (1977); see also *Guillebeau v. Jenkins*, supra at 229-230.

Garrett, in opposition to the motions for summary judgment, submitted the affidavit of a nonlawyer who by experience qualified as an expert in lending practices. The expert rendered the opinion that the assignee of a mortgage was the true lender and not the broker in whose name the mortgage was taken and that the closing attorney was the agent of the assignee. Therefore, any expert opinion as to the attorney-client relationship as to agency by a nonlawyer is beyond the education, skill, and knowledge of a nonlawyer. The trial court can accept or reject the qualifications of an expert witness or the opinion of an expert outside the area of their expertise. Therefore, the trial court properly did not consider the opinion of a nonlawyer regarding the existence, nonexistence, or conflict of interest of agency arising from the attorney-client relationship.

Further, the Truth in Lending Act defines the "creditor" as a person who both

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness

or "[a]ny person who originates 2 or more mortgages referred to in subsection (aa) in any 12-month period or any person who originates 1 or more . . . mortgages through a mortgage broker shall be . . . a creditor for purposes of this title." 15 USCS § 1602 (f). Subsection (aa) reads in part: "[a] mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan." 15 USCS § 1602 (aa) (1). Both a broker and lender are classified as creditors. *McGowan v. Credit Center of North Jackson*, 546 F2d 73 (5th Cir. 1977). A home improvement contractor and the lender are statutory creditors under the Act. *Sosa v. Fite*, 498 F2d 114 (5th Cir. 1974). However, 15 USCS § 1631 (a) mandates that, where multiple creditors are involved in the loan transaction, only one creditor must make the disclosures required. Assignees of mortgages come within a separate section recognizing the legal significance under state law of the assignment of the debt.

> Except as otherwise specifically provided in this title, any civil action for a violation of this title or proceeding under [15 USCS § 1607] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment is involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this title.

15 USCS § 1641 (a). However, nothing in the Truth in Lending Act treats the lender or broker and the assignee as one and the same so that the lender's closing attorney becomes the agent of the assignee;

the Act merely treats both as creditors. See generally *Ford Motor Credit Co. v. Cenance*, 452 U. S. 155 (101 SC 2239, 68 LE2d 744) (1981), on remand, *Cenance v. Bohn Ford, Inc.*, 666 F2d 97 (5th Cir. 1982).

### Case No. A01A2019

3. Garrett contends that the trial court erred in finding that the statute of limitation had run, because Baggarly's fraud tolled it. These two enumerations of error are controlled by Divisions 1 and 2. *Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED OCTOBER 15, 2001.

*William A. Wehunt*, for appellant.
*Paul, Hastings, Janofsky & Walker, John G. Parker, Eric J. Taylor*, for appellee (case no. A01A2018).
*Drew, Eckl & Farnham, James M. Poe, Lisa S. Higgins, Sean W. Conley*, for appellee (case no. A01A2019).