A10A2029. ELLIS v. INGLE et al.
(703 SE2d 104)

BLACKBURN, Senior Appellate Judge.

Seeking to recover the costs required to clean up a pre-existing landfill on a tract of land, the buyer of the tract sued the seller on an indemnity agreement, in which the seller had indemnified the buyer for any pre-existing environmental problems on the tract. In turn, the seller filed a third-party complaint against the attorney who closed the real estate deal and her law firm, alleging that the closing attorney had failed to follow the closing instructions in completing the transaction. Specifically, the seller averred that prior to closing, the seller had agreed to accept a reduced price in exchange for the invalidation of the indemnity agreement, but that the closing attorney had wrongfully delivered the indemnity agreement to the buyer even though the buyer had paid the seller only the reduced price and even though the closing attorney had expressly agreed to act otherwise. Because some evidence supported the seller's allegations, the trial court erred in granting summary judgment to the closing attorney and her law firm on the third-party complaint. Accordingly, we reverse.

---

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that Michael Ellis (the "seller") agreed to sell a large tract of land to Southern Timber Company (the "buyer") for $700,000, resulting in the parties executing a real estate contract to this effect. Because the buyer later heard that there might be an illegal landfill on a portion of the site, the buyer then required that the seller indemnify the buyer for any environmental problems on the land. The closing attorney (Karen Ingle) and her law firm (Minor, Bell & Neal, P.C.) were to be similarly indemnified by the seller. Because the seller anticipated being out of town for the closing, the seller executed all the closing documents prior to closing. Working through his own attorney, the seller several days before the closing delivered to the closing attorney (who represented neither party but only the lender) the signed indemnity agreements, settlement statement, warranty deed, and related documents.

Shortly after the seller's executed documents were delivered to the closing attorney but before closing, the parties renegotiated the deal. The seller agreed to accept $50,000 less on the purchase price, in exchange for which the buyer agreed to forego the indemnity and to accept the property "as is." The indemnity in favor of the closing attorney and her law firm was also to be invalidated. The buyer called the closing attorney and informed her of the new agreement, which led the closing attorney to contact the seller's counsel via e-mail and request that the seller execute a new settlement statement prepared by the closing attorney. The seller's counsel agreed to get his client to execute the new settlement statement and also indicated that the parties needed to sign an amendment to the original real estate contract, which amendment the seller's counsel had prepared and attached to his return e-mail. In the text of the e-mail, the seller's attorney reiterated the terms of the amended agreement, specifically referring to the reduced $650,000 selling price and to the term that the buyer was taking the property "as is." He indicated that his client was looking over the revised settlement statement and the amended real estate contract.

The closing attorney responded in a return e-mail, asking

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997).

whether the buyer would be signing the amended agreement prior to closing, "or do I need to have him sign it here?" The seller's counsel responded affirmatively, stating that he would have his own client sign the amendment in his office (and would then have the original hand-delivered to the closing attorney) and requesting that the closing attorney have the buyer sign the amendment at closing. The closing attorney agreed to the request by return e-mail, stating "No problem at all for me."

The seller executed the amendment, which reduced the selling price, stated the property was being sold "as is," and expressly superseded any indemnity agreements. The seller also executed a new settlement statement reflecting the new $650,000 selling price. After announcing to the closing attorney via e-mail that such had occurred and that the documents would soon be delivered to the closing attorney, the seller's attorney then had these executed documents hand-delivered to the closing attorney, referring to these as the documents needed for the closing.

At the closing, at which neither the seller nor his attorney was present, the closing attorney closed the deal based on the amended $650,000 purchase price and had the buyer execute the amended settlement statement received from the seller's attorney; nevertheless, the closing attorney did not require the buyer to execute the amendment received from the seller's attorney in the same package. Moreover, the closing attorney delivered the environmental indemnity agreements to herself and to the buyer (which had been executed by the seller in connection with the first version of the deal) in contravention of the terms of the amended deal. Once the seller learned that the amended real estate contract had not been signed at closing, the seller demanded that the buyer sign the document, but the buyer refused.

When faced with the costs required to clean up the landfill, the buyer sued the seller on the indemnity agreement (also asserting fraud causes of action) for those costs. The seller filed a third-party complaint against the closing attorney and her law firm, alleging that the closing attorney had failed to follow the closing instructions on the amended deal by closing the deal at the amended price but nevertheless delivering the indemnity agreements and failing to obtain the buyer's signature on the new real estate contract. The closing attorney and her firm moved for summary judgment, arguing that they did not represent the seller and were not responsible to protect his interests. Without offering its reasons, the trial court granted summary judgment to the closing attorney and her firm. The seller appeals.

Undoubtedly, the closing attorney and her law firm did not represent the seller at the closing. However, some evidence, includ-

ing several e-mails between the closing attorney and the seller's attorney, showed that the closing attorney understood that the deal had changed to reflect a lower selling price, in exchange for which the buyer was to execute the new real estate contract, which superseded the indemnity agreements executed in connection with the original deal. Some evidence, including the same exchange of e-mails between the closing attorney and the seller's attorney, further showed that the closing attorney expressly agreed to obtain the buyer's signature on the new real estate contract (already executed by the seller) at the closing. Indeed, the closing attorney stated that doing so would not be a problem.

Setting aside whether the closing attorney received the closing documents from the seller in trust or in escrow (see OCGA § 44-5-42), and setting aside further that the closing attorney would not appear to have been authorized to close the transaction in contravention of the closing instructions, we hold that in any event it is clearly established that

> one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon. Where one undertakes an act which he has no duty to perform and another reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care.

(Citation omitted.) *Stelts v. Epperson.*[2] See *Osowski v. Smith.*[3] Compare *Moore v. Harris*[4] (no evidence showed that attorney agreed to provide voluntary services).

Here, some evidence showed that the closing attorney and her law firm agreed to close the transaction in accordance with the closing instruction to obtain the buyer's signature on the amended real estate contract, which precluded the delivering of the indemnity agreements. The seller, who was not present at closing and who had delivered these signed documents in reliance on the closing attorney's following the closing instructions, may have reasonably relied

---

[2] *Stelts v. Epperson*, 201 Ga. App. 405, 407 (411 SE2d 281) (1991).
[3] *Osowski v. Smith*, 262 Ga. App. 538, 540 (1) (586 SE2d 71) (2003).
[4] *Moore v. Harris*, 188 Ga. App. 251, 253 (372 SE2d 654) (1988).

on the closing attorney to act in accordance with the attorney's agreement to obtain the buyer's signature on the amended real estate contract. At a minimum, some evidence showed that the closing attorney's failure to perform this undertaking with reasonable care subjected her and her law firm to liability. Accordingly, the trial court erred in granting summary judgment to the closing attorney and her firm.

*Judgment reversed. Barnes, P. J., and Senior Appellate Judge Marion T. Pope, Jr., concur.*

DECIDED OCTOBER 29, 2010.

*Edward Hine, Jr.,* for appellant.
*Carlock, Copeland & Stair, Michele R. Jones,* for appellees.