**FIFTH DIVISION**
**MCFADDEN P. J.,**
**BROWN, and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 17, 2023**

# In the Court of Appeals of Georgia

A23A0732. SIMMONS v. FLINT, CONNOLLY & WALKER, LLP et al.

MCFADDEN, Presiding Judge.

Leslie Simmons, in her capacity as conservator for Sheryl Cole, brought this action which asserted, among other things, that law firm Flint, Connolly & Walker, LLP ("the firm") and one of its attorneys, Andrew Smith, had performed negligently in a real estate transaction in which Cole was the seller. Simmons contends that the firm and Smith breached a duty to Cole to ensure that the property conveyed in the transaction was what Cole had agreed to convey. It is undisputed that the firm and Smith did not represent Cole in the transaction, but Simmons argues that the firm and Smith owed Cole a duty of care under the voluntary-undertaking doctrine. We

disagree, so we affirm the trial court's rulings on cross-motions for summary judgment in favor of the firm and Smith.

1. *Facts and procedural posture*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate." *Brown v. Sapp*, 351 Ga. App. 352 (829 SE2d 169) (2019) (citation and punctuation omitted). Most of the evidence relevant to the duty that the firm and Smith owed Cole — the dispositive issue in this appeal — is undisputed and shows the following.

Cole owned 92 acres of real property, which included her residence and a flooded quarry. In 2013, she leased a portion of the property, including the quarry, to Dive Georgia, LLC for use in a recreational diving business. In 2017, Dive Georgia brought an action against Cole alleging that she was interfering with its rights under

2

the lease. The firm and Smith represented Dive Georgia in that action, which was resolved in October 2017 with a consent order.

Subsequently, on November 13, 2017, Cole entered into a letter of intent with Brian Rickman, the managing partner of Dive Georgia, to sell her "House and 20+/-Acres" of the property. Rickman testified that this property was to include the entire quarry. A rough drawing of the property was attached to the letter of intent.

On November 22, 2017, Cole and Rickman signed a real estate sales contract for the property identified in the letter of intent. The contract designated the firm as the closing agent. The contract gave Rickman 30 days to obtain a survey of the property.

On December 6, 2017, Rickman obtained a survey, which showed that the property, including the quarry, was 36.57 acres. The property depicted on the survey resembles that depicted on the rough drawing. On December 12 and December 21, 2017, Cole and Rickman signed addenda to the real estate sales contract that, among other things, referred to the December 6 survey in the description of the property to be sold.

Before the closing, Smith, an attorney with the firm, oversaw the preparation of a warranty deed with a short form legal description that had been included in the

3

title examination of the property. The warranty deed described all of the property shown on a recorded plat "less and except" two tracts conveyed through earlier warranty deeds. Although Smith believed this description referred to the 36.57 acres shown on the December 6 survey, it actually encompassed the entire 92 acres owed by Cole. Smith concedes that the legal description in the warranty deed was incorrect.

Smith also oversaw the preparation of a quitclaim deed with a metes and bounds legal description. The purpose of that deed, according to Smith, was to "cover any gaps and gores" revealed by the updated survey. The quitclaim deed described the 36.57 shown on the December 6 survey, which was attached to that deed. The quitclaim deed also expressly stated that the property described therein was a 36.57-acre parcel. The parties dispute whether the quitclaim deed conveyed more property than Cole and Rickman had intended.

The real estate closing occurred on January 31, 2018. It was attended by Smith, as the closing attorney; Rickman; Cole; and Cole's brother, David Soulis, a retired attorney who attended the closing only in his capacity as Cole's brother. There was no lender involved in the closing, and the firm and Smith represented the buyer, Rickman. Smith told Cole that he did not represent her at the closing.

At one point during the closing, Cole became confused about a term of one of the addenda requiring Cole to pay for some repairs, which caused Soulis to raise the issue of her capacity. After asking Cole a few rudimentary questions, Smith was satisfied of her capacity, and Soulis did not object to the continuation of the closing or advise Cole not to proceed.

Cole reviewed and signed the warranty and quit claim deeds at the closing. She also reviewed and initialed the December 6 survey, which was attached to the quitclaim deed. Before signing the quitclaim deed, she asked why the legal description in that deed referred to 36.57 acres, and Rickman explained that it was the property depicted in the survey, which was the subject of their agreement. Cole nodded in response to that explanation and did not ask any other questions about the deeds.

A few months later, Rickman filed a dispossessory proceeding against Cole after she failed to vacate the property by an agreed-upon date. In the course of that proceeding, Smith discovered the discrepancy between the legal descriptions in the warranty and quitclaim deeds and realized that the legal description in the warranty deed was erroneous.

In July 2018, the firm sent the attorney who had represented Cole in the dispossessory proceeding a corrective warranty deed for Cole to sign. Cole's attorney responded that Cole lacked the mental capacity to sign the corrective deed and that her family was in the process of obtaining a conservatorship over her legal affairs. (A corrective deed has since been tendered to the trial court. ) On September 25, 2018, a probate court found Cole to be in need of a conservatorship due to declining cognitive function, and that court appointed Leslie Simmons as Cole's conservator.

Simmons brought this action on Cole's behalf both against the firm and Smith and against Rickman[1] and other persons and entities affiliated with him. She initially asserted that Cole lacked the mental capacity to sign the deeds at the closing and that the firm and Smith owed her a duty to ascertain that fact. But she has since withdrawn her claim that the deeds should be canceled for lack of capacity and on appeal she argues only that the firm and Smith breached a duty to Cole to ensure that the property conveyed in the transaction was what Cole had agreed to convey. Simmons's claims against the other defendants are not at issue in this appeal.

---

[1]Cole represents in her Brief of Appellant that Rickman has tendered a deed, but that there remain other unresolved issues between them.

6

Simmons filed a motion for partial summary judgment on the claims against the firm and Smith, and the firm and Smith filed a cross-motion for summary judgment on those claims. The trial court ruled in favor of the firm and Smith on those motions, and Simmons appeals.

2. *Analysis*

"[B]efore an action for malpractice or negligence can lie against an attorney, there must be a legal duty from the attorney to the plaintiff." *McKenna Long & Aldridge, LLP v. Keller*, 267 Ga. App. 171, 173 (1) (598 SE2d 892) (2004) (citation and punctuation omitted). The trial court found that neither the firm nor Smith had a legal duty to Cole. Simmons challenges this holding on appeal, but we find no error.

As an initial matter, there is no evidence — and Simmons does not contend — that the firm or Smith had an attorney-client relationship with Cole. Such a relationship

> generally is a matter of express contract, [but] it may be implied from the conduct of the parties. Ultimately, there must be a reasonable belief on the part of the would-be client that he or she was being represented by the attorney. Such reasonable belief is one which is reasonably induced by representations or conduct on the part of the attorney.

*Vazemiller v. Sanders*, 360 Ga. App. 788, 791-792 (1) (861 SE2d 626) (2021)

(citations and punctuation omitted).

It is undisputed that, at the closing, the firm and Smith represented Rickman, not Cole. "At a loan or real estate closing, the closing attorney acts only as agent for the client or clients who retained him." *Garrett v. Fleet Finance Inc. of Ga.*, 252 Ga. App. 47, 52 (2) (556 SE2d 140) (2001). See also *Browne & Price, P. A. v. Innovative Equity Corp.*, 361 Ga. App. 521, 528-529 (3) (864 SE2d 686) (2021) (closing attorney who represented buyer in real estate transaction was not liable to seller for legal malpractice because the attorney did not have an attorney-client relationship with the seller). And there is no evidence showing that any representations or conduct on the part of Smith or anyone else at the firm induced a reasonable belief otherwise on the part of Cole. The firm's only communication with Cole before the closing involved verifying information such as her name, confirming the date and time of the closing, and sending her some of the closing documents in advance. Smith told Cole at the closing that he was not representing her. The firm had an existing attorney-client relationship with the buyer, Rickman, and had recently represented Rickman's company, Georgia Dive, in a proceeding adverse to Cole. Cole's brother, Soulis, had

advised Cole to consult her own attorney in connection with the real estate transaction.

Instead, Simmons argues that the firm and Smith had a duty to Cole under the voluntary-undertaking principle. "[U]nder certain circumstances, professionals owe a duty of reasonable care to parties who are not their clients, i. e., not in privity with them." *Kirby v. Chester*, 174 Ga. App. 881, 884 (2) (331 SE2d 915) (1985). And we have held that a closing attorney may be liable to someone who is not his client for voluntary undertakings performed negligently. *Ellis v. Ingle*, 306 Ga. App. 674, 677-678 (703 SE2d 104) (2010). Under the voluntary-undertaking principle, which we have described as "clearly established" in Georgia,

> one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon. When one undertakes an act that he has no duty to perform and another person reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care.

9

Id. at 677 (citation and punctuation omitted). Accord *Sheaffer v. Marriott Intl.*, 349 Ga. App. 338, 341 (1) (826 SE2d 185) (2019); *Osowski v. Smith*, 262 Ga. App. 538, 540-541 (1) (586 SE2d 71) (2003).

This principle is also expressed in the Restatement (Second) of Torts § 323, to which Simmons points as the basis for her claim that the firm and Smith owed Cole a duty of care even though Cole was not their client. We have occasionally cited that Restatement section in support of the voluntary-undertaking principle. See, e. g., *Rymer v. Polo Golf & Country Club Homeowners Assoc.*, 335 Ga. App. 167, 176 (2) (b) (780 SE2d 95) (2015) (citing Restatement (Second) of Torts § 323 as support for tort liability based on the voluntary undertaking of a homeowners association to make a repair).

The parties to this appeal focus some of their arguments on whether the facts of this case satisfy the "plain language" of that Restatement section and whether Georgia has applied it to claims against attorneys. We take this opportunity to stress that while we have looked to the Restatement for "guidance in defining [a] tort," the Restatement "is not a statute or other authority binding on Georgia's courts, and the Restatement should be considered as a whole for what it is — a learned treatise." *Global Payments v. InComm Financial Svcs.*, 308 Ga. 842, 844 n. 1 (843 SE2d 821)

10

(2020). And we need not engage in the parties' Restatement-specific arguments, because there is Georgia authority directly on point that rejects this application of the voluntary-undertaking principle and supports the trial court's rulings in favor of the firm and Smith.

In *Driebe v. Cox*, 203 Ga. App. 8 (416 SE2d 314) (1992), we addressed the issue of "whether the attorney for the buyer in a real estate action can be held liable to the seller for negligence in legal work in connection with the sale." Id. at 9 (1). As here, *Driebe* involved alleged negligence in the drafting of the legal description in a warranty deed. Because that legal description erroneously referred to more property than the seller actually owned, a jury found that the seller who signed that deed was liable to the buyer for breach of warranty of title. Id. at 8-9. But the jury found the seller was entitled to indemnification from the closing attorney even though, as here, that attorney did not represent the seller at the closing. Id. at 9.

We reversed the seller's judgment against the attorney, holding that the attorney owed no duty of care to the seller. *Driebe*, 203 Ga. App. at 9-11 (1). In doing so, we acknowledged Georgia authority holding that a closing attorney who "gratuitously offer[ed] to act for [a non-client] . . . subjected himself to liability for misfeasance." Id. at 10 (1) (discussing *Simmerson v. Blanks*, 149 Ga. App. 478 (254

11

SE2d 716) (1979), which considered whether a closing attorney could be considered a non-client's gratuitous agent).

Nevertheless, we held in *Driebe* that the closing attorney did not owe a duty to the seller, for several reasons. The seller in *Driebe* "knew that [the attorney] was hired by [the buyer] to close the transaction and that [the attorney] was not representing [the seller's] interests at the closing." *Driebe*, 203 Ga. App. at 10 (1). The closing attorney had "made no gratuitous promise to [the seller]," despite having drafted the erroneous warranty deed for the closing. Id. The attorney "had no reason to believe that [the seller] would be relying on him to tell [the seller] what property he owned[.]" Id. at 11 (1). And the seller "had no reason to rely on [the attorney] or to believe that [the attorney] would be representing his interests at the closing." Id. We concluded in *Driebe* that "[b]y not carefully checking the closing documents and by limiting the role of his attorney at the closing, [the seller] chose to act to his detriment[.]" Id. So we held that the seller had no recourse against the attorney for the attorney's negligence in drafting a warranty deed with an erroneous legal description. Id.

Simply put, *Driebe* stands for the principle that a closing attorney's drafting of a legal description for a warranty deed, or taking other actions required to close the

12

transaction for his or her client — are not themselves voluntary undertakings that would impose a duty of care to a party who is not the attorney's client. This reading of *Driebe* is consistent with cases in which we *have* imposed upon a closing attorney a duty of care to a non-client. In those cases, the attorneys promised to take actions that were not necessary for the closing — in other words, voluntary or gratuitous actions. See, e. g., *Ellis*, 306 Ga. App. at 677-678 (closing attorney made an express agreement with non-client seller to obtain the buyer's signature on a a new real estate contract, already executed by the seller who could not attend the closing, to reflect a change in the parties' agreement); *Simmerson*, 149 Ga. App. at 479-481 (2) (attorney who closed a sale of both real and personal property promised non-client seller to file a document related to the personal property as a favor to the seller). Compare *Williams v. Fortson, Bentley & Griffin*, 212 Ga. App. 222, 224 (1) (c) (441 SE2d 686) (1994) (rejecting argument that a closing attorney undertook a duty to the non-client buyers to make sure the termite report from the sellers was acceptable before disbursing the proceeds of the sale); *Legacy Homes v. Cole*, 205 Ga. App. 34, 36 (421 SE2d 127) (1992) (closing attorney was not liable to non-clients where "nothing in the record shows anything [the closing attorney] did or said that could be construed as a voluntary offer to represent [the non-clients] or do anything on their behalf").

13

We see no meaningful difference between the facts of this case and those of *Driebe*. Both involved a closing attorney who represented the buyer, not the seller. Both involved the attorney's alleged negligence in preparing a legal description in a warranty deed, to the seller's detriment. As in *Driebe*, there are no facts in this case showing that Smith made any gratuitous promise to Cole or offered to do anything for her, beyond what was required to complete the closing on behalf of his client, Rickman. There are no facts showing that Cole had reason to believe Smith was representing her interests in the closing or that Smith had reason to believe Cole was relying on him to do so.

Simmons argues that this case is different from *Driebe* because there is evidence that Cole had a diminished mental capacity at the time of the closing. Although, as stated above, Simmons has withdrawn the claim that Cole is entitled to have the conveyances canceled for lack of capacity, there is evidence in the record that by January 2018, Cole was experiencing disorientation and forgetfulness. But even if Cole's mental capacity was in fact diminished, Simmons has pointed to no evidence that this gave Smith reason to believe that she was relying on him to represent her interests.

As in *Driebe*, Smith's mere acts of overseeing the preparation of the closing documents and conducting the closing are not enough to impose upon him, or the firm, a duty of care to Cole, who was not his or the firm's client. For these reasons, we conclude that the trial court did not err in ruling in favor of the firm and Smith on the parties' cross-motions for summary judgment.

*Judgment affirmed. Brown and Markle, JJ., concur*.