**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 18, 2025**

# In the Court of Appeals of Georgia

A25A0062. IN RE ESTATE OF HUBBELL.

MCFADDEN, Presiding Judge.

This appeal concerns a dispute over the compensation due to the administrator of an estate. Georgia's Probate Code entitles the personal representative of an estate to "[t]wo and one-half percent commission on all sums of money received by the personal representative on account of the estate . . . and 2 ½ percent commission on all sums paid out by the personal representative[.]" OCGA § 53-6-60 (b) (1). At issue here is the application of this provision to a real estate closing, where the closing attorney, who is the lender's agent, received and paid out various sums and then disbursed to the personal representative the net proceeds of the sale.

The administrator in this case, appellant Michael Sumner, argues that this provision entitles him to a commission based on the sums received and paid out by the closing attorney. Instead, the probate court calculated his commission based on the net proceeds that Sumner actually received on behalf of the estate. Because we agree with the probate court that the plain language of OCGA § 53-6-60 (b) (1) only entitled Sumner to a commission based upon the net proceeds, we affirm.[1]

1. *Procedural history*

Richard H. Hubbell died intestate, leaving an estate that included real property. The probate court appointed Sumner (the county administrator, see OCGA § 53-6-35) as the administrator of the estate and authorized him to sell the property.

A real estate closing was conducted by a closing attorney who was retained by and provided legal services to the purchasers' lender. Documentation of that transaction included a closing disclosure, or closing statement, showing that the estate received $242,198.73 from the sale. That amount was calculated by deducting the total amount due from the estate ($561,796.81, primarily comprised of the amount of the

---

[1] We thank the amici curiae, a group of county administrators regularly appointed by Georgia probate courts for unrepresented estates, for their brief in this case.

payoff of a loan encumbering the property) from the total amount due to the estate ($803,995.54, primarily comprised of the property's the sales price). The closing statement was prepared by the closing attorney, who stated in writing that the closing statement was a "true and accurate account of the funds which were received and have been or will be disbursed by [him] as part of the settlement of the transaction." In other words, in the transaction the closing attorney received the $803,955.54 due to the estate, paid out the $561,769.81 due from the estate, and then paid the estate $242,198.73.

In a petition for a final settlement of accounts, Sumner sought compensation that included a commission based off of both the gross proceeds of the real property sale received by the closing attorney and the amounts paid out to others by the closing attorney as part of that sale. The heirs objected, challenging among other things the method of calculating the proposed commission.

After a hearing, the probate court held that the applicable statute, OCGA § 53-6-60 (b) (1), did not entitle Sumner to a commission calculated on either the gross proceeds of the real estate sale or the amounts paid out at the closing. She reasoned that, under the plain language of the statute, Sumner was entitled to compensation

based on "only those sums of money actually received by [him and] on amounts he actually paid out on behalf of the estate."

2. *Analysis*

The personal representative of an estate is entitled to compensation. OCGA § 53-6-60. Where, as here, there is no will or separate written agreement specifying the amount of such compensation, the personal representative is entitled to, among other things, "[t]wo and one-half percent commission on all sums of money received by the personal representative on account of the estate, except on money loaned by and repaid to the personal representative, and 2 ½ percent commission on all sums paid out by the personal representative, either for debts, legacies, or distributive shares[.]" OCGA § 53-6-60 (b) (1).

Sumner and the amici argue that the phrases "received by the personal representative" and "paid out by the personal representative" may encompass sums received by or paid out by the real estate closing attorney. But

> [w]hen we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. We therefore look to the text of the statute, give the language its plain and ordinary meaning, view it in the context in which it appears, and read it

4

in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Walton Elec. Membership Corp. v. Ga. Power Co.*, 320 Ga. 740, 747 (2) (__ SE2d __) (2025) (citations and punctuation omitted).

Doing so, we cannot agree with Sumner's position. Although we have described OCGA § 53-6-60 (b) (1) as allowing a "commission on the amounts flowing through the [e]state. . . ," *In re Estate of Sims*, 259 Ga. App. 786, 787 (1) (578 SE2d 498) (2003), the plain language of the statute requires the sums to be received or paid out *by the personal representative* in order to entitle the personal representative to a commission. It is undisputed that Sumner himself did not receive or pay out any sums as part of the real estate sale, other than receiving the net proceeds of $242,198.73 that the closing attorney disbursed to him.

Georgia law does not permit us, under a theory of agency, to attribute to Sumner the closing attorney's acts of receiving and paying out sums in the real estate transaction. "At a loan or real estate closing, the closing attorney acts only as the agent for the client or clients who retained him. Where, [as here,] there is a lender and a borrower and the closing attorney was retained by the lender, the closing attorney

5

represents only the lender." *Garrett v. Fleet Finance, Inc. of Ga.*, 252 Ga. App. 47, 52 (2) (556 SE2d 140) (2001) (citations omitted).

And to the extent Sumner is arguing that the estate constructively "received" the gross proceeds of the real estate sale, that argument also lacks merit. Sumner has not shown that the estate had the power to demand that the closing attorney disburse the gross proceeds to the estate, in a manner contrary to the closing statement. See generally *D. Robert Autrey, Jr., P. C. v. Baker*, 228 Ga. App. 396, 397 (2) (492 SE2d 261) (1997) (holding, in a case involving an attorney's escrow account, that "[c]onstructive possession may be used to designate the relationship between the owner of property and the property when the owner is not in actual possession thereof, and the general rule seems to be that if the owner knows where the property is, *so that he would be able to recover the actual possession when he desired*, then he is in constructive possession") (citation and punctuation omitted; emphasis supplied).

Construing the statute to exclude sums received or paid out by the closing attorney, who is neither the personal representative or his agent, reads the statutory language in its most natural and reasonable way. This construction also comports with the requirement that we construe the statute strictly, as a statute in derogation of

common law. See *Walton v. Gairdner*, 111 Ga. 343, 344-345 (36 SE 666) (1900) (construing Civil Code § 3484, a predecessor to OCGA § 53-6-60 (b) (1) containing similar language). And it is not absurd to limit a personal representative's commissions in this way, given that another provision of the Probate Code permits a personal representative to petition "for compensation greater than that allowed under Code Section 53-6-60" if circumstances warrant it. OCGA § 53-6-62 (a).

Certainly, there may be policy reasons for construing OCGA § 53-6-60 (b) (1) more expansively, as Sumner and the amici argue. But "[i]t is for the General Assembly, not appellate judges, to strike the difficult balance between competing policy interests." *Speedway Motorsports v. Pinnacle Bank*, 315 Ga. App. 320, 329 (2) (727 SE2d 151) (2012). For these reasons, the probate court did not err in construing the statute to limit the calculation of Sumner's commissions to sums that were actually received by or paid out by him, which, in the case of the real estate sale, were the estate's net proceeds.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*